[Civ. No. 18162. Second Dist., Div. Three. Feb. 27, 1952.]

S. M. BROOKS et al., Appellants, v. INDEPENDENT EXPLORATION COMPANY (a Corporation) et al., Respondents.

[Civ. No. 18163. Second Dist., Div. Three. Feb. 27, 1952.]

ELLEN E. DAVIS et al., Appellants, v. CITIZENS TITLE COMPANY (a Corporation) et al., Defendants; INDEPENDENT EXPLORATION COMPANY (a Corporation) et al., Respondents.

Eugene L. Wolver, Arthur G. Baker, Arthur C. Miller and Harold E. Prudhon for Appellants.

O'Melveny & Myers, Sidney H. Wall, Philip F. Westbrook, Jr., Bennett W. Priest, Lawrence L. Otis, James F. Healey, Jr., and Walter L. Rowse for Respondents.

WOOD (Parker), J.—These two actions were consolidated for trial. Plaintiff Brooks commenced the first action above mentioned and sought to obtain a judgment that he is entitled to possession of 1¼ acres of land, as lessee under an oil lease, and to oil produced from an oil well thereon. Thereafter plaintiff Davis joined as a party plaintiff in that action and alleged that she is the owner of and entitled to the mineral rights in said land, subject to said oil lease held by Brooks as lessee.

In the second action above mentioned, plaintiffs Davis, Wood, Jackson, Miller, Wolver, Marks and Brooks sought to compel the trustee, under a trust deed, to execute partial reconveyances of mineral rights in four 1¼-acre parcels of land. (One of these parcels is the parcel referred to in the first action.) In both actions, the plaintiffs sought a declaration by the court as to whether there had been a legal substitution of trustee under the trust deed.

Judgment in the first action was that neither plaintiff had any interest in said 1¼ acres of land; and that defendants Independent Exploration Company and Rothschild Oil Company are the owners of the exclusive right to remove oil from said land. Judgment in the second action was that none of the plaintiffs is entitled to any reconveyance of any part of said four parcels of land; that none of the plaintiffs has any interest in said land; and that defendants Moore are owners of and entitled to possession of all said four parcels of land, subject to the exclusive right of defendants Independent Exploration Company and Rothschild Oil Company to remove oil therefrom. Plaintiffs appeal from the judgments.

In 1938 Mr. and Mrs. T. M. Frew, Jr., conveyed by grant deed about 211 acres of land to LeRoy Harrod for the agreed price of $3,000. At the time of said transaction, and as security for the payment of $2,900, the unpaid balance of the purchase price, Mr. Harrod and his wife executed a trust deed covering said land, which deed was recorded on August 31, 1938. Under that trust deed, the Harrods were the trustors, T. M. Frew, Jr., was the beneficiary, and the Citizens Title Company was the trustee. The land was community property of the Harrods.

Harrod divided the land into 1¼-acre parcels and thereafter made written agreements for the sale of the mineral rights in 44 of those parcels. The agreements provided that when the buyer had complied with all the terms of his agreement (including payment in full) the seller would deliver to him a mineral deed conveying to him the mineral rights in the parcel sold, "subject to conditions, restrictions, rights and rights-of-way of record." On the reverse side of the agreement there is a printed statement, made by the real estate commissioner for the information of the public, which recites in part that the land is encumbered by said trust deed. In 1939 Harrod made such an agreement with plaintiffs Jackson for the sale of one parcel, with plaintiff Wood for two parcels, and with Mr. Fordahl (plaintiff Davis' predecessor in interest) for one parcel. Thereafter in 1939 Harrod and wife executed mineral deeds in favor of the Jacksons and Wood. In 1940 Harrod executed a mineral deed in favor of the Royal Land Corporation conveying all the mineral rights in said subdivided acreage not theretofore conveyed. (It appears that said corporation was owned by Harrod and A. J. Rankin.) Thereafter in 1940 the said corporation executed a mineral deed in favor of Fordahl.

The trust deed, above referred to, provided in part as follows: "It is expressly agreed that Citizens Title Company, Trustee, herein, shall be and is hereby authorized at any time during the life of this Deed of Trust, provided no default shall have been declared thereunder, to execute and deliver to the parties entitled thereto, Partial Reconveyance of the property hereinabove described in parcels of five (5) or more acres, the same to be reconveyed upon payment of $17.50 per acre." In February, May, June and August, 1939, the trustee executed partial reconveyances of the land described in the trust deed.

On November 4, 1939, Mr. Frew, the beneficiary under the trust deed, signed a document which is as follows:

## "SUBSTITUTION OF TRUSTEE

"WHEREAS, A Trust Deed was executed on August 25, 1938, naming the Citizens Title Company, a California Corporation, as Trustee, and LeRoy Harrod and Ruth H. Harrod, husband and wife, as Trustors, and T. M. Frew, Jr., as Beneficiary, which Trust Deed was recorded in Book 16033 at Page 105 of Official Records of Los Angeles County;

"Now THEREFORE, A. J. Rankin, is hereby substituted for said Citizens Title Company, a California Corporation, as Trustee in said Trust Deed.

"This substitution is made pursuant to the provisions of Section 2934A of the Civil Code.

"IN WITNESS WHEREOF the said T. M. Frew, Jr., the Beneficiary under said Trust Deed has caused his name to be affixed hereto this 4th day of November, 1939.

T. M. Frew Jr.
_____
T. M. Frew, Jr.''

On said November 4th Mr. Frew acknowledged before a notary public that he executed said document. Mr. Frew testified that after he signed the document he apparently handed it back to Harrod; before he signed the document Harrod had called him and said that they would have to make a substitution of trustee, that it would be to their benefit to do it, that something was wrong in the trustee company; and he (Frew) agreed that they "would make A. J. Rankin— that it would be in his name." Harrod testified that on December 13, 1939, he took said document to the Citizens Title Company, the trustee named in the trust deed; that when he requested the trustee to sign the substitution he delivered to the trustee a letter, signed by him, which was was as follows (Exhibit F):

"December 13, 1939

"Citizens Title Company,
354 South Spring Street,
Los Angeles, California.

"Gentlemen:

"We enclose herewith Substitution of Trustee in duplicate in the Frew matter, which please have the proper officers of your company sign on the page marked, 'receipt,' and return one copy to us.

"Thank you.

Very truly yours,

LEROY HARROD''

He testified further that after the trustee had signed the substitution he took the original document to his (Harrod's) office and delivered it to Rankin; that on December 18, 1939, he sent the said document, by mail, to the county recorder for recording. Attached to said document, entitled "Substitution of Trustee," there is another document entitled

"Receipt" which was signed by the trustee. The said receipt is as follows:

"RECEIPT

Receipt of a copy of the attached Substitution of Trustee is hereby acknowledged and we hereby consent thereto.

Dated: Dec. 13th, 1939.

CITIZENS TITLE COMPANY

By L. A. Troutman

Secretary.

(Seal of Citizens
Title Company)"

The "Substitution of Trustee," with the trustee's receipt attached, was recorded on December 27, 1939, in the office of the Recorder of Los Angeles County. Harrod testified that he asked Frew if he would agree to substitute a trustee in place of the Citizens Title Company; he (Harrod) suggested that A. J. Rankin be made the trustee; Frew said that was agreeable to him; he (Harrod) then prepared said document herein referred to as a substitution of trustee; he took it to Frew, who was at Newhall, and Frew signed it; then Frew handed it to him and asked that he follow the necessary procedure to complete the substitution.

A. J. Rankin, who was named in the substitution of trustee, testified that in 1939 he was general manager of Harrod's real estate office; he was requested by Harrod to act as substituted trustee under the trust deed; on December 13 or 14, 1939, he (Rankin) mailed, by registered mail, copies of the substitution of trustee to Mr. and Mrs. Harrod; on March 26, 1941, in compliance with a written request by Mr. and Mrs. Frew, he executed a reconveyance of approximately 35 acres of land.

The court found that between November 4th and December 27, 1939, A. J. Rankin was duly substituted as trustee under the deed of trust.

Mr. Frew testified that in April, 1948, when he heard that oil had been discovered in Placerita, he notified Harrod that he wanted his money on the note and trust deed. Harrod then told Rankin that he was trying to obtain money with which to buy the trust deed. Rankin told Harrod that he would speak to Bishop Moore about the matter.

On May 26, 1948, Mr. and Mrs. Frew transferred the

said note (which was then in default) and trust deed to Bishop Moore for $1,750. At the time of such transfer, payments required to be made on the note were delinquent. The trust deed provided that no deficiency judgment should be taken against the makers of the trust deed (the Harrods).

On June 23, 1948, Mr. and Mrs. Moore, as lessors, and Independent Exploration Company, as lessee, entered into an oil lease covering about 158 acres of the land described in the trust deed. The land so leased included the four parcels of land involved herein. (On June 29, 1948, Mr. and Mrs. Moore acknowledged before a notary public that they executed the oil lease. On December 28, 1948, the vice-president and the assistant secretary of the Independent Exploration Company acknowledged before a notary public that said corporation executed the oil lease.)

On June 28, 1948, a notice of default and election to sell under the trust deed, signed by Moore, was recorded at his request. On November 6, 1948, Rankin, as trustee, sold the property to Moore, and on November 9, 1948, the said trustee delivered his trustee's deed to Moore. Said deed was recorded on January 11, 1949. On May 16, 1949, the Independent Exploration Company started to drill the first oil well on the leased property. The well, which was completed on May 30, 1949, produced 660 barrels of oil per day. Thereafter said company drilled other oil producing wells on the property. On September 15, 1949, the Independent Exploration Company assigned an undivided 40 per cent of its interest in the oil lease to the Rothschild Oil Company. On September 25, 1949, those companies started to drill an oil well on the 1¼-acre parcel of land as to which a mineral deed had been executed in favor of Fordahl.

Fordahl died, and his interest in said parcel of land was distributed by a decree of distribution to plaintiff Davis. The decree was recorded on September 28, 1949. On October 14, 1949, plaintiff Davis, as lessor, and plaintiff Miller, as lessee, entered into an oil lease covering the parcel of land to which plaintiff Davis held a mineral deed. On October 17, 1949, plaintiff Miller assigned a one-third interest in said oil lease to plaintiff Marks and a one-third interest to plaintiff Wolver. On October 20, 1949, plaintiff Wood, as lessor, and plaintiffs Miller, Wolver and Marks, as lessees, entered into an oil lease covering the two parcels of land to which plaintiff Wood held a mineral deed. On September 27, 1949, plaintiffs Jackson, as lessors, and plaintiff Marks, as lessee, entered

into an oil lease covering the parcel of land to which plaintiffs Jackson held a mineral deed. On October 17, 1949, Marks assigned a one-third interest in the last-mentioned oil lease to plaintiff Miller and a one-third interest to plaintiff Wolver. On October 22, 1949, plaintiffs Miller, Marks and Wolver assigned their interests in the three oil leases (covering the four parcels involved here) to plaintiff Brooks, but reserved certain royalties to themselves.

Lessee Brooks, preparatory to drilling for oil upon the land to which Davis held a mineral deed, caused a survey to be made of that land on the morning of said October 22d, and at that time he placed a stake thereon indicating the location of the proposed well. In the afternoon on said day, it appears that some of the defendants erected a gate across the road which Brooks had used in going to said parcel of land. On October 25, 1949, Brooks, with drilling equipment, sought to enter upon said land by using that road, but a guard refused to open the gate. Thereafter Brooks made demands upon defendants that he be permitted to use said road and to go upon the land, but the demands were refused. The Brooks action herein was commenced on November 1, 1949, and the Davis action was commenced the following day.

Appellants contend that the statute (Civ. Code, § 2934a) authorizing the substitution of a trustee is not applicable to the trust deed involved herein; that the purported substitution of A. J. Rankin as trustee was not made in compliance with the provisions of the statute; and that the sale to Bishop Moore by said purported trustee was void. That section provides in part: "The trustee under a trust deed upon real property given to secure an obligation to pay money and conferring no other duties upon the trustee than those which are incidental to the exercise of the power of sale therein conferred, may be substituted by the recording in the county in which the property is located of a substitution executed and acknowledged by all of the beneficiaries under such trust deed, or their successors in interest." Appellants argue that the trust deed herein confers a duty upon the trustee which is not incidental to the exercise of the power of sale conferred therein, in that, the trustee is authorized to make partial reconveyances of the property in parcels of five or more acres upon the payment of a certain amount of money. They also argue that the purported substitution of

trustee was not made in compliance with said section 2934a, in that, no affidavit of service of notice of substitution of trustee was attached to said substitution. Said section provides in part: ". . . beneficiaries who elect to substitute trustees hereunder shall cause a copy of such substitution to be mailed, prior to the recording thereof, . . . to all persons to whom a copy of the notice of default would be required to be mailed. . . . The substitution must contain . . . affidavit attached to said substitution to the effect that notice has been given to the persons and in the manner above required." The persons entitled to such notice were Mr. and Mrs. Harrod. As above shown, Rankin testified that he mailed, by registered mail, copies of the substitution of trustee to Mr. and Mrs. Harrod. It is not necessary to decide whether the method of substitution of a trustee as provided in said section 2934a is applicable to the trust deed herein, or to decide whether the failure to attach an affidavit of service of notice to the substitution rendered the substitution ineffectual. In *Pacific States S. & L. Co.* v. *North American Bond & Mtg. Co.*, 37 Cal.App.2d 307 [99 P.2d 355], the plaintiff, who had purchased real property from a substituted trustee under a trust deed, sought to quiet title against the original trustee. The successor of the original beneficiary and the successor of the original trustor therein jointly executed and recorded a document entitled "Substitution of Trustee" and complied with the requirements of said section 2934a for the purpose of substituting the new trustee. The original trustee therein asserted that the substitution of trustee was invalid. The court therein held that the substitution was made by the joint action of the successor of the beneficiary and the successor of the lender, that it was not dependent on said section 2934a for its validity, and that the substitution was valid. The court said at page 310: "In other words, we are of the view that the principal parties to the transaction, to wit, the trustor and the lender, or the successors of said parties, may by appropriate joint action revoke the trust entirely leaving the title to the property in the trustor or his successor free of any trust or encumbrance; that they may by appropriate joint action convey title to a third person free of any trust or encumbrance; and that they may by appropriate joint action substitute a new trustee in the place of the original trustee named in the deed of trust. . . . We conclude that the substitution jointly executed and recorded by the successor of the trustor and the successor of the lender was valid

and that it effectively revoked the powers of the defendant trustee and terminated any interest of the defendant trustee in the property.'' As above stated, the court in the present case found that Rankin was duly substituted for Citizens Title Company as trustee under the trust deed. It also found that about November 4, 1939, it was agreed between the Harrods, as trustors, and Mr. Frew, as beneficiary, that Rankin would be substituted as trustee; that about said date and pursuant to the express request of said trustors, the said Mr. Frew, as beneficiary, executed a substitution of trustee in writing which provided that Rankin was thereby substituted for Citizens Title Company as trustee; that about December 13, 1939, and pursuant to the express written request of said trustors, the Citizens Title Company endorsed on said substitution of trustee its consent in writing to the substitution; that said beneficiary caused a copy of the substitution to be mailed about December 13, 1939, by registered mail, to each of the trustors, Mr. and Mrs. Harrod, at the address specified in the trust deed for the mailing of a copy of any notice of default and sale; that the substitution was recorded on December 27, 1939; that the agreement that Rankin would be substituted in place of the Citizens Title Company as trustee was, on or before April 17, 1941, fully executed and recognized by all persons who were parties to the trust deed at the time of said substitution.

The substitution of trustee was made about 9 years before the land was sold by the substituted trustee. (The substitution was made in December, 1939, and the sale made in November, 1948.) About a year after the trustee's sale, and about five months after oil had been discovered by the defendant oil companies on the 158 acres of land described in the trust deed, the appellants Miller, Wolver, Marks and Brooks entered into oil leases with appellants Davis, Wood and Jackson (who held mineral deeds), or became assignees of oil leases made by them, covering the five acres of land involved herein. Within a few weeks after becoming such lessees, the appellants commenced these actions alleging invalidity of the substitution of the trustee. The evidence shows that the new trustee accepted the substitution; that the original trustee consented in writing to the substitution; that the beneficiary stated in writing that he substituted a new trustee; that LeRoy Harrod, one of the trustors and the husband of the other trustor, prepared the document referred to as the substitution of trustee, personally presented it to the beneficiary for

execution by him, personally presented it to the original trustee and requested in writing that the trustee endorse thereon that it had received a copy thereof and consented to the substitution; that Harrod then delivered it to the new trustee and caused it to be recorded; that the new trustee acted under the substitution and issued partial reconveyances at the request of the beneficiary. It thus appears from all the evidence that the beneficiary, the original trustee, and a trustor (husband of the other trustor) agreed upon the substitution of the trustee and that they evidenced their agreement by writings which, when considered together and in connection with the circumstances under which the writings were made, constitute a written agreement by them to substitute a trustee. The beneficiary stated in writing that he substituted A. J. Rankin as trustee. The original trustee stated in writing (on a document attached to said writing of the beneficiary) that it consented to the substitution. Harrod, the trustor husband, stated in his letter to the original trustee that, ''We enclose herewith Substitution of Trustee in duplicate in the Frew matter, which please have the proper officers of your company sign on the page marked 'receipt,' and return one copy to us.'' (On the page so marked, the original trustee stated that it consented to the substitution.) Although Mrs. Harrod, one of the trustors, did not sign any instrument in connection with the substitution, it appears that the land was community property and, under the circumstances here, it was not necessary that she sign such an instrument. The husband has the management and control of the community real property (Civ. Code, § 172a) and the wife is not required to join with him in executing an instrument pertaining to the property except when it ''is leased for a longer period than one year, or is sold, conveyed, or encumbered.'' The substitution of the trustee under the trust deed herein was not within the exceptions mentioned. The evidence shows, as found by the court, that the agreement that Rankin would be substituted as trustee was fully executed and recognized by the persons who were parties to the trust deed at the time the substitution was made. Harrod wrote to Frew on March 26, 1941 (over a year after the substitution), and asked him for a reconveyance of 35 acres of the land. Frew wrote to Rankin, the substituted trustee, and requested him to make the reconveyance. On April 17, 1941, Rankin executed such a reconveyance. No one who was a party to the trust deed at the time the substitution

was made is objecting herein, or asserting any invalidity, regarding the substitution of trustee. In the case of *Pacific States S. & L. Co.* v. *North American Bond & Mtg. Co., supra,* 37 Cal.App.2d 307, it was the original trustee who asserted the alleged invalidity of the substitution of a trustee, but it was held, as above stated, that under the circumstances therein the beneficiary and trustor had made a valid substitution of trustee. In the present case, all the parties to the trust deed acted under and recognized the substitution of trustee for many years prior to the time appellants (as lessees, or assignees of lessees, of the holders of mineral deeds) commenced these actions. The evidence supports the finding of the trial court that the substitution of trustee was valid.

■ Appellants also assert that the Harrods were obligated to deliver a marketable title to the mineral rights. The agreements to sell mineral rights were made after the trust deed was recorded on August 31, 1938, and they recited that they were subject to conditions, restrictions, rights, and rights-of-way of record. Also, as above shown, the statement by the real estate commissioner on the reverse side of the agreements recited that the land was encumbered by the trust deed. The mineral deeds recited that they were subject to "Rights and/or Rights-of-way of record." The evidence was sufficient to support the finding that none of the appellants had any interest in the land. The court also found that there was no collusive agreement by Harrod, Rankin, or Moore for the purpose or with the intent of depriving any of the appellants of his interest in the land. It appears that the evidence was sufficient to support that finding.

Appellants also contend that the defendant oil companies were not bona fide purchasers of the oil lease from the Moores without notice of the rights of the purchasers of the mineral rights. The court found, upon sufficient evidence, that the oil companies purchased the oil lease without notice of any equity claimed by any of the appellants.

By reason of the above conclusions, it is not necessary to discuss the other contentions of appellants.

The judgments are affirmed.

Vallée, J., and Vickers, J. pro tem., concurred.

A petition for a rehearing was denied March 18, 1952, and appellants' petition for a hearing by the Supreme Court was denied April 24, 1952.